*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TAXPAYERS FOR MICHIGAN
CONSTITUTIONAL GOVERNMENT, STEVE
DUCHANE, RANDALL BLUM, and SARA
KANDEL,

   Plaintiffs,

v

STATE OF MICHIGAN, DEPARTMENT OF
TECHNOLOGY, MANAGEMENT, AND
BUDGET, OFFICE OF THE AUDITOR
GENERAL, GOVERNOR OF THE STATE OF
MICHIGAN, and DIRECTOR OF THE
DEPARTMENT OF TECHNOLOGY,
MANAGEMENT, AND BUDGET,

   Defendants.

FOR PUBLICATION
December 22, 2022

No. 334663
Original Action

ON REMAND

Before: BORRELLO, P.J., and SHAPIRO and GADOLA, JJ.

SHAPIRO, J. (*dissenting*).

I respectfully dissent from the majority's conclusion that state funding of public school academies (PSAs) authorized by a school district, an intermediate school district (ISD), or community college must be counted as spending to a "unit of local government" for purposes of the Headlee Amendment.[1] I also respectfully dissent from the majority's conclusion that mandamus is not justified as to the Department of Technology, Management and Budget (DTMB).

---

[1] I agree with the majority that state funding of PSAs sponsored by state universities and by Bay Mills Community College may not be counted as state aid to a local unit of government.

I.  STATE FUNDING OF PSAs

A.  TEXT OF THE HEADLEE AMENDMENT

§ 30 of the Headlee Amendment provides:

> The proportion of total state spending paid to all units of Local Government, taken as a group, shall not be reduced below that proportion in effect in fiscal year 1978-79.  [Const 1963, art 9, § 30.]

The first question before us is whether a PSA is a "unit of Local Government" for purposes of § 30.  The answer to that question is contained within the text of § 33 of the Headlee Amendment, which defines "Local Government" as follows:

> "Local Government" means any political subdivision of the state, including, but not restricted to, school districts, cities, villages, townships, charter townships, counties, charter counties, authorities created by the state, and authorities created by other units of local government.  [Const 1963, art 9, § 33.]

The majority concludes, as I do, that a PSA is not a school district,[2] a city, a village, a township or a county.  The only remaining category under Headlee is "authorities created by other units of local government."   However, the majority does not address whether PSAs fall within that category, even though this is defendants' primary argument on remand.

The claim that PSAs are "authorities" has no support in caselaw or actual practice.  Defendants nevertheless argue that a PSA must be an "authority" (a noun) because it is "authorized" (a verb) to operate by local governments.  While PSAs are "authorized" by various public agencies, it does not follow that they themselves are "authorities" under § 33.  The Revised School Code, MCL 380.1 *et seq*., repeatedly refers to "authorizing bodies" such as ISDs and community colleges, but never refers to a PSA or its board as an "authority."

Local governments regularly authorize activities by private entities and enter into contracts with private entities, but that does not transform these entities into governmental authorities.  A review of state statutes that actually create "authorities" demonstrates that "being authorized" is not the same as being "an authority."  Unlike PSAs which are "authorized" to perform certain activities, each of those other entities are expressly referred to by statute as an "authority":

- Hospital Authority Act, MCL 331.1 *et seq*.—allows two or more local governments "to form a hospital authority and issue bonds for the purpose of planning, promoting, acquiring, constructing, improving . . . community hospitals . . . ."  MCL 331.1(1).

---

[2] Our prior opinion had held that PSAs are school districts and therefore units of local government, but the Supreme Court reversed and held that a PSA is not a school district for purposes of the Headlee Amendment. *Taxpayers for Mich Constitutional Gov't v State of Michigan*, 508 Mich 48, 67-70; 972 NW2d 738 (2021).

- Art Institute Authority Act, MCL 123.1201 *et seq.*—permits establishment of an art institute authority and specifically defines "authority" to mean "an art institute authority established under section 5 [of the act]." MCL 123.1203(e). The Act further provides that "[a]n art institute authority is an authority under section 6 of article IX of the statue constitution of 1963." MCL 123.1205(2).

- Regional Transit Authority Act, MCL 124.541 *et seq.*—allows establishment of an "authority," which it defines as "a regional transit authority created under this Act." MCL 124.542(a). MCL 124.543 states:

  > (1) . . . . An authority created under this act is a municipal public body corporate and a metropolitan authority authorized by section 27 of article VII of the state constitution of 1963, shall possess the powers, duties, functions, and responsibilities vested in an authority by this act, and shall carry out the rights, duties, and obligations provided for in this act. An authority is not an agency or authority of this state.

  > (2) The name of an authority created under subsection (1) shall include the phrase "regional transit authority."

- Public Airport Authority Act, MCL 259.108 *et seq.*—allows local governments to form a "public airport authority," which has the "power and duty of planning extending, maintaining, . . . and operating all airports and airport facilities under the operational jurisdiction of or owned by the authority." MCL 259.116(1)(c).

- Mackinac Bridge Authority Act, MCL 254.301 *et seq.*—establishes the Mackinac Bridge Authority "to provide and maintain a system of highways and bridges for the use and convenience of its inhabitants," and "the authority shall have all powers necessary or convenient to carry out he things authorized." MCL 254.302(1).

- Building Authorities and Joint Building Authorities, MCL 123.951 *et seq.*—allows a local government to establish "1 or more authorities for the purpose of . . . operating and maintaining a building or buildings . . . together with appurtenant properties and facilities . . . ." MCL 123.951(1). MCL 123.955 states that "the authority" shall be governed by a body, "which shall be known as the 'commission,' " MCL 123.955(d), and meetings of the commission must be held in compliance with the Open Meetings Act, MCL 123.955a(5).

- Metropolitan Transportation Authorities Act, MCL 124.401 *et seq.*— permits counties to form regional transportation authorities in major metropolitan

areas. MCL 124.406 provides for the powers and duties of "any authority" established under the statute.

- Sewage Disposal Authority, MCL 124.281 *et seq.*—allows "2 or more municipalities to form an authority for the purpose of acquiring, owning . . . and operating a sewage disposal system . . . ." MCL 124.282(1).

- Charter Water Authority Act, MCL 121.1 *et seq.*—provides that municipalities "may incorporate a municipal authority comprising the territory within their respective limits for the purpose of . . . operating and maintaining a water supply and transmission system." MCL 121.2.

In sum, the Revised School Code does not define a PSA as an "authority" despite the Legislature's clear use of that term as to those entities it wishes to so classify. Nor are PSAs granted general authority over an area of governmental operation as are authorities that operate and oversee roads, hospitals, airports, building, sewage and water supply. A PSA operates a single school and while it is "authorized" to do so, it is by no means a governmental authority. Given these fundamental differences, I cannot conclude that the Headlee voters would have considered a PSA an authority created by local government or an equivalent thereof. And the Supreme Court has already rejected the argument that PSAs are sufficiently analogous to other authorities such that they should be considered political subdivisions of the state. See *Taxpayers for Mich Constitutional Gov't v State of Michigan*, 508 Mich 48, 75; 972 NW2d 738 (2021) ("[A]ssuming that the authorities identified in the dissent are all political subdivisions of the state, we do not find PSAs sufficiently analogous to them to conclude that, if those authorities are political subdivisions of the state, PSAs must also be political subdivisions of the state.").

## II. THE COMMON UNDERSTANDING OF THE HEADLEE VOTERS

The majority never determines whether the common understanding of the Headlee voters in 1978 would have been that public schools operated by private contractors are "units of local government." I respectfully suggest that it fails to do so because such a conclusion is untenable.

First, it is undisputed that an individual school, even a traditional public school, is not a school district[3] or a "unit of local government." This is particularly significant here because the

---

[3] As the Supreme Court observed:

[W]e conclude that the Headlee voters would not consider PSAs as equivalent with "school districts" as the term was understood at the time the amendment was ratified. Like traditional school districts, PSAs deliver education to the students of this state, but they do not resemble traditional school districts in many other ways. For example, PSAs are organized as nonprofit corporations by a person or other entity, while school districts are legislative creations. PSAs are not limited to a defined local geographic area like school districts. Instead of a locally elected school board directly beholden to the voters of a school district, the governing body

majority seems to conclude that because a PSA is a "public school" any funding directed to it must be considered as state spending to a "unit of local government." But the words "public school," like the words "public school academy," do not appear in the Headlee Amendment.

Second, PSAs did not yet exist at the time of Headlee's ratification in 1978,[4] and the majority cites no fact or legal argument grounded in events or law that predate that time. Rather, it relies on 1993 PA 362, which created PSAs and was enacted into law 15 years *after* the voters adopted Headlee. The majority also cites to *Council of Organizations and Others for Education about Parochiaid, Inc v Governor*, 455 Mich 557; 566 NW2d 208 (1997), which was decided about 20 years after the Headlee Amendment was ratified. Moreover, the sole question in *Council of Organizations* was whether the 1993 statute permitting establishment of PSAs was constitutional given the bar on the funding of private schools. See Const 1963, art 8, § 2. The case contained no discussion of the Headlee Amendment.

While having little to nothing to say about the "common understanding" of the Headlee voters, the majority focuses on what it believes is the common understanding of today. Putting aside whether the majority accurately reflects the common understanding of today, it fundamentally errs in transporting the views of 2022 (or 1997 when *Council of Organizations* was decided) to those in 1978. As the Supreme Court made clear in *Taxpayers*, 508 Mich at 69, "that the Legislature authorized the creation of PSAs and treats them as school districts for the specific purpose of receiving aid from the State School Aid Fund tells us nothing about whether the *voters* would have understood a PSA to be a 'local government' for purposes of the Headlee Amendment."[5]

---

of a PSA is made up of a board of directors comprised of privately selected members. MCL 380.503(11). Unlike a school district board, the board of directors of a PSA may enter into a contract with an education-management corporation to manage or operate the PSA or to provide the PSA with instructional or other services. See MCL 380.503c; MCL 380.503(6)(k) and (n). A PSA is funded solely by the state and may not levy taxes like a school district. A PSA, in fact, is often viewed as an alternative to the traditional educational services offered by a school district, not an equivalent. Accordingly, we conclude that a PSA is not a "school district" as Headlee voters would have understood the term. [*Taxpayers*, 508 Mich at 69-70.]

[4] In reversing our earlier decision, the Supreme Court stated that "[t]he Legislature's subsequent enactment of a statute cannot supersede the common understanding of a term adopted by the voters who ratified the constitutional amendment." *Taxpayers*, 508 Mich at 68.

[5] Ironically, the majority cites this statement when rejecting the notion that tribal-controlled community college districts should be deemed to fall within Headlee because after the passage of the Amendment, the Legislature authorized tribal community college districts to function under the Community College Act. However, the majority fails to recall this holding when addressing the common understanding of PSAs at the time of Headlee's passage.

Third, the majority fails to address the reality of how PSAs are funded. "Traditional" public schools are not allocated individualized sums of money from the state. Rather, the state funds school districts, and they distribute those funds as the elected board determines best serves its students. In contrast, state funds are allocated specifically to individual PSAs. These funds "pass through" local school or community college districts as the "fiscal agents" of a PSA they authorize, but the elected board has no power to control those funds. The funds do not belong to the local school district, they belong to the PSA, which is operated by a private board of directors. The district is a legal conduit, i.e., a "fiscal agent," and not the *recipient* of the aid. It has no authority over those funds beyond their receipt and immediate transfer of those funds to the private entity that operates the PSA as required by MCL 388.1622a:

> (3) For pupils in membership in a qualifying public school academy, there is allocated under this section to the authorizing body that is the fiscal agent for the qualifying public school academy *for forwarding to the qualifying public school academy* an amount equal to the 1994-95 per-pupil payment to the qualifying public school academy under section 20. [Emphasis added.]

There is no comparable provision in law under which the state determines support for individual schools and directs the school district to "forward" those funds in the predetermined amounts to individual schools. Rather, the funding is provided to the local school district, whose board determines how best to allocate the funds to the schools within it. The fact that the monies belong to the PSA rather than the local school district is further demonstrated by the fact that each PSA receives its own school district code. And the local school district is permitted to charge for the services it provides to the PSA. MCL 380.502(6) provides that an authorizing body may charge the PSA up to 3% of the "state school aid received by the public school academy."[6]

In addition, while the authorizing body is required to "oversee" the PSA to ensure compliance with the contract and with state school law, MCL 380.507(1)(d), the authorizing body does not operate or manage PSAs. By statute, PSAs are operated by a private board of directors: "A public school academy shall be organized and administered under the direction of a board of directors in accordance with this part and with bylaws adopted by the board of directors." MCL 380.502(1). And they must comply with the Nonprofit Corporation Act, MCL 450.2101 *et seq.*, which has no applicability to traditional public schools. Traditional public schools have no admission requirements, but PSAs are empowered by state law to set their own "admission policy and criteria." MCL 380.502(3)(c)(*iii*).

In sum, a PSA is not a "unit of local government" as defined by the text of the Headlee Amendment. In addition, the majority's conclusion that the voters in 1978 would have viewed the funding of PSAs as state spending to "units of local government" lacks any support predating the adoption of Headlee. Further, neither the statute creating PSAs nor *Council of Organizations* address Headlee or whether a PSA is the equivalent of a "unit of local government," let alone bear on the voter's common understanding in 1978.

---

[6] Notably, the statute refers to "state school aid received by the public school academy" not "state school aid provided to the authorizing body of the public school academy."

-6-

Accordingly, I would hold that state funding of PSAs does not constitute aid to a unit of local government and grant summary disposition to plaintiffs.

## II.  MANDAMUS

The Supreme Court vacated our order of mandamus and directed us to "specify which defendant is failing to perform which clear legal duty and [to] analyze whether granting the extraordinary writ of mandamus is warranted." *Taxpayers*, 508 Mich at 86.

Having undertaken such a review, I would conclude that the Governor's request for dismissal should be granted as the Governor is not subject to mandamus.  See *Straus v Governor*, 459 Mich 526, 532; 592 NW2d 53 (1999).  I also agree that the Office of the Auditor General is entitled to dismissal as the body tasked by statute to provide the subject reports is the DTMB.[7]

I would, however, not dismiss the request for mandamus directed against DTMB.  It clearly has ministerial duties[8] under MCL 21.241 and 21.235.  After initially admitting that MCL 21.241's reporting requirements had not been complied with,[9] defendants now maintain that there has been compliance with both statutes and provided two reports—one for fiscal year 2021 and one for fiscal year 2022—that purportedly satisfy the statutory requirements.  However, it is not clear from the face of the reports whether they in fact meet the requirements of the two reporting statutes nor, assuming the reports do comply, is it clear whether DTMB has filed reports in any other years or if it disputes its duty to do so in the future.  Accordingly, I would deny each side's request for summary disposition regarding mandamus and declaratory relief as to DTMB and hold an evidentiary hearing, after which this Court can decide the issue on the basis of its findings.

/s/ Douglas B. Shapiro

---

[7] MCL 21.232(6) defines "Department" as "the department of management and budget."

[8] While the content of the reports may require discretionary acts, the completion and publication of the reports is ministerial.

[9] As noted in the Supreme Court's opinion: "In answer to the complaint, the state defendants denied that they had not complied with MCL 21.235 but admitted that they had not completed the reporting requirements of MCL 21.241." *Taxpayers*, 508 Mich at 83.  Defendants' answer read in pertinent part: "Defendants deny as untrue that the reporting requirements of MCL 21.235 are not met  . . . .  However, Defendants admit that the reporting requirements in MCL 21.241 have not been completed."